UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AMERICAN BUILDERS
INSURANCE CO RRG, INC.,

     Plaintiff,

v.                                   Case No. 8:22-cv-2959-VMC-CPT

CARROLLTON PREMIERE
ROOFING, INC. and SIENA VILLAS
AT BEACH PARK CONDOMINIUM
ASSOCIATION, INC.

     Defendants.
_____/

## REPORT AND RECOMMENDATION

     Before me on referral is Plaintiff American Builders Insurance Co RRG, Inc.'s (ABIC) *Third Amended and Renewed Motion for Default Final Judgment for Declaratory Relief Under Counts I [and] II of Its Complaint as to Defendant Sien[a] Villas at Beach Park Condo. Assoc.* (Doc. 43). For the reasons set forth below, I respectfully recommend that ABIC's motion be granted.

I.

     The following facts are largely derived from ABIC's complaint and the attachments thereto (Doc. 1) and are assumed to be true for purposes of ABIC's motion, *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015) (per

curiam). ABIC is an insurance company which is organized under the laws of Texas and which maintains its principal place of business in Montgomery, Alabama. (Doc. 1 at 2). Defendant Carrollton Premiere Roofing, Inc. (Carrollton) is a Georgia corporation which offers commercial roofing services to the public and which has a principal place of business in Temple, Georgia. *Id.* at 2–3. Defendant Siena Villas at Beach Park Condominium Association, Inc. (Siena Villas) is a Florida non-profit corporation which has a principal place of business in Hillsborough County, Florida. *Id.* at 2.

At some point in time on or before February 8, 2019, ABIC issued a commercial general liability insurance policy (Policy) to Carrollton. *Id.* at 3. In doing so, ABIC relied on the representations made by Carrollton during the Policy's application process and calculated the premium for "commercial roofing" projects and not residential ones. *Id.*

As discussed in greater detail below, ABIC's Policy with Carrollton had two provisions of relevance here. *Id.* at 3–9; (Doc. 1-2). The first was a "Classification Limitation Endorsement," which restricted coverage to "commercial roofing." (Doc. 1 at 3–8); (Doc. 1-2 at 7–8, 74). The second was an "Abandoned Work" exclusion, which stated that the Policy did not apply to "a claim or suit arising out of any work, including project, or jobsite, or any other activity that has been abandoned." (Doc. 1 at 8–9); (Doc. 1-2 at 48).

In May 2019, Siena Villas hired Woodstone Construction and Custom Roofing, LLC (Woodstone) to install new roofs on five of Siena Villas's buildings, all of which

were three stories or less and thus deemed to be residential in nature.  (Doc. 1 at 5, 7);
(Doc. 1-1 at 2).  The contract between Siena Villas and Woodstone provided, *inter alia*,
that Woodstone would use a certain watertight and weatherproof roofing system
costing more than $300,000, and that it would supply Siena Villas with the names of
any subcontractors for pre-construction approval.  (Doc. 1-1 at 3).  Woodstone
subsequently acquired an insurance policy with Arch Specialty Insurance Company
(Arch) and, unbeknownst to Siena Villas, retained Dreamworks Restoration
Contractors, LLC (Dreamworks) as a subcontractor.  *Id.* at 3–4; (Doc. 1 at 5).
Dreamworks, in turn, engaged Carrollton to handle some or all of the roofing labor on
the project.  (Doc. 1-1 at 4); (Doc. 1 at 5).

Installation of the new roofs began in or around June 2019.  (Doc. 1 at 5).  The
next month, in July 2019, Siena Villas learned that there were defects in the roofing
work which were causing damage to the buildings and asked Woodstone to rectify the
problem. *Id.*; (Doc. 1-1 at 5).  Woodstone responded that its insurer, Arch, would have
to sign-off on any such remedial efforts.  (Doc. 1 at 5).  Arch, however, never
authorized such curative measures, and Woodstone—and, by extension, Carrollton—
therefore refused to continue with the project.  *Id.* at 6.  As a result, in September 2019,
Siena Villas terminated Woodstone and, in effect, Carrollton for faulty work and
abandonment. *Id.*

That same month, Siena Villas commenced a lawsuit in Florida state court
against Woodstone, Dreamworks, and Woodstone's principal, Donald Cohagen.  *Id.*;
*see also Siena Villas at Beach Park Condo. Ass'n v. Woodstone Constr. & Custom Roofing*, No.

3

2019-CA-009812 (Fla. 13th Cir. Ct.).  Siena Villas later amended its state court complaint to add Carrollton as a defendant and included counts against Carrollton for negligence, trespass, and violations of the Florida Deceptive and Unfair Trade Practices Act.  (Doc. 1 at 6); (Doc. 1-1).  For relief, Siena Villas sought compensation for the labor and materials needed to address the defective work performed on their buildings, including monies for, *inter alia*, repair, remediation, remodeling, engineering, replacement housing, and lost rent.  (Doc. 1-1 at 12–15).

Roughly three years later, in December 2022, ABIC brought the instant diversity action against Carrollton and Siena Villas, seeking a declaratory judgment that it had no duty to defend or indemnify Carrollton in the Siena Villas state court litigation based on the "Classification Limitation Endorsement" and "Abandoned Work" provisions in its Policy with Carrollton.  (Doc. 1).  Carrollton answered ABIC's complaint (Doc. 20), but Siena Villas did not.  As a result, ABIC requested and obtained a clerk's default against Siena Villas in March 2023.  (Docs. 13–14).  ABIC subsequently filed two motions for default judgment against Siena Villas (Docs. 22, 26), both of which were denied without prejudice due to various deficiencies (Docs. 24, 29).

In August 2024, ABIC and Carrollton filed a joint stipulation of dismissal of Carrollton without prejudice.  (Doc. 37).  The Court construed that joint stipulation as a motion for voluntary dismissal pursuant to Federal Rule of Civil Procedure 41(a)(2) and granted the request even though Siena Villas remained in the case, reasoning that a number of courts had awarded the same relief in similar

circumstances. (Doc. 39) (citing, *e.g.*, *Sanchez v. Disc. Rock & Sand, Inc.*, 84 F. 4th 1283, 1292–93 (11th Cir. 2023)).

ABIC's instant motion for a default judgment against Siena Villas followed several months later. (Doc. 43). Siena Villas has not filed a response to that motion, and the time for doing so has expired. The matter is therefore ripe for the Court's consideration.

## II.

Before tackling the substance of ABIC's motion, I must first address a threshold issue posed by that submission. The "preferred practice" in multi-defendant actions like this one where some but not all of the defendants are in default is to withhold granting default judgment against the defaulted defendants until there is an adjudication on the merits as to the non-defaulted defendants. *See N. Pointe Ins. Co. v. Glob. Roofing & Sheet Metal, Inc.*, 2012 WL 5378826, at *4 (M.D. Fla. Sept. 4, 2012); *Zurich Am. Ins. Co. v. Ednic Trading Corp.*, 2014 WL 869216, at *1 (S.D. Fla. Mar. 5, 2014). This practice need not be followed here, however, because the non-defaulted Defendant, Carrollton, has been dismissed from the action, leaving Siena Villas as the lone remaining Defendant. *See Substation Enters., Inc. v. Sayers Constr., LLC*, 2023 WL 23101, at *1 (M.D. Fla. Jan. 3, 2023) (stating that it was appropriate to bring a default judgment motion against a defaulted defendant in a multi-defendant lawsuit since the claims against the appearing defendant were dismissed); *Pace v. Williams*, 2015 WL 5162368, at *1 (S.D. Ala. Aug. 31, 2015) (allowing the plaintiff to seek a default judgment against a defaulted defendant where the other two defendants were

5

dismissed from the action); *see also Great Am. Assurance Co. v. Stover*, 2021 WL 5033476, at *3 (N.D. Ga. May 24, 2021) (observing that a court is within its discretion to "enter default judgment against some parties to an action without binding or affecting the rights of other defendants actively litigating the case"); *Canal Ins. Co. v. Williams*, 2014 WL 12733551, at *3–4 (S.D. Ga. Feb. 19, 2014) (ruling on a default judgment motion against the defaulted defendants despite the fact that a non-defaulted defendant remained in the case, as the non-defaulted defendant was not similarly situated to the defaulting parties, did not actively contest the factual allegations, and did not contest the plaintiff's repeated attempts to secure a default judgment against the non-appearing defendants).

III.

A.

Having disposed of this threshold question, I turn to the legal framework that governs motions for default judgments.  Federal Rule of Civil Procedure 55 provides that where, as here, a clerk's default has been entered, a plaintiff may apply to either the clerk or the court for the entry of a default judgment.  Fed. R. Civ. P. 55(b).  Before awarding such relief, however, a court must ensure that it has both subject matter jurisdiction over the plaintiff's claims and personal jurisdiction over the defendant. *Wagner v. Giniya Int'l Corp.*, 2020 WL 7774385, at *1 (M.D. Fla. Dec. 3, 2020), *report and recommendation adopted*, 2020 WL 7768949 (M.D. Fla. Dec. 30, 2020).  Part of this inquiry obligates a court to confirm that the defendant which is the subject of the default judgment has been properly served with the complaint.  *Opella v. Rullan*, 2011

6

WL 2600707, at *4 (S.D. Fla. June 29, 2011) ("Insufficient or improper service of process cannot support the entry of a default judgment, even if the defendant has actual notice of the suit."), *report and recommendation adopted*, 2011 WL 13220496 (S.D. Fla. Aug. 9, 2011).

If subject matter and personal jurisdiction are established, a court must then ascertain whether "there is 'a sufficient basis in the pleadings for the [sought-after] judgment[.]'" *Surtain*, 789 F.3d at 1245 (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).[1]  The burden on the movant in this context is akin to the one borne by a party seeking to defeat a motion to dismiss for failure to state a claim.  *Graveling v. Castle Mortg. Co.*, 631 F. App'x 690, 698 (11th Cir. 2015) (per curiam) ("The requisite factual showing for a default judgment is similar to the factual showing necessary to survive a motion to dismiss for failure to state a claim.") (citing *Surtain*, 789 F.3d at 1245); *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997) ("[A] default judgment cannot stand on a complaint that fails to state a claim.") (citations omitted).  A court thus looks to see whether the complaint contains adequate factual averments, which—if accepted as true—state "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In undertaking this analysis, a court must consider a defaulted defendant to have "admit[ted] the plaintiff's well-

---

[1] The Eleventh Circuit, in its en banc decision in *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981), adopted as precedent the opinions of the former Fifth Circuit rendered prior to October 1, 1981.

pleaded allegations of fact." *Cotton v. Mass. Mut. Life. Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005).

B.

With these principles in mind, I proceed to the question of the Court's jurisdiction over the claims and the parties, starting with issue of subject matter jurisdiction. Under 28 U.S.C. § 1332(a), federal courts have original jurisdiction over all civil actions where there is diversity of citizenship between the parties, and where the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). To demonstrate the requisite diversity of citizenship, a plaintiff must show that there is complete diversity among the parties—i.e., that no plaintiff is a citizen of the same state as any defendant. *Underwriters at Lloyds, London v. Osting-Schwinn*, 613 F.3d 1079, 1085 (11th Cir. 2010); *Legg v. Wyeth*, 428 F.3d 1317, 1320 n.2 (11th Cir. 2005). For purposes of this inquiry, a corporation is deemed to be a citizen of the state in which it is incorporated and the state where it has its principal places of business. 28 U.S.C. § 1332(c).

Here, as discussed above, ABIC is a corporation organized in Texas with its principal place of business in Alabama, and Siena Villas is a Florida non-profit corporation with its principal place of business in Florida. (Doc. 1 at 2). The diversity prong is thus met.

The question as to whether the amount in controversy crosses the $75,000 threshold warrants a more extended discussion. When an insurer seeks a declaration that it has no duty to defend or indemnify its insured in an underlying lawsuit, the amount in controversy is determined by examining: "'(1) the coverage limits under the

8

insurance policy; (2) the amount of damages sought in the underlying lawsuit; and (3) the pecuniary value of the obligation to defend the underlying lawsuit.'" *Accident Ins. Co. v. DWF Installations, Inc.*, 2025 WL 807446, at *2 (M.D. Fla. Mar. 13, 2025) (quoting *Southern-Owners Ins. Co. v. Maronda Homes, Inc. of Fla.*, 2019 WL 2929715, at *2 (M.D. Fla. July 8, 2019)).

With respect to the first factor, the limit of ABIC's Policy with Carrollton is $1,000,000. *See* (Doc. 1-2 at 7). Accordingly, this factor supports a finding that the monetary requirement is satisfied. *See Hudson Specialty Ins. Co. v. Magio's Inc.*, 2018 WL 8259544, at *2 (S.D. Fla. June 14, 2018) (determining that the amount in controversy more than likely exceeded the jurisdictional minimum, in part, because the subject policy included a $1,000,000 per occurrence coverage limit).

I reach the same conclusion relative to the second factor. Although the underlying complaint in Siena Villas's state court action does not expressly seek more than the state court's jurisdictional minimum of $30,000, *see* (Doc. 1-1), the allegations in the state court complaint, along with exhibits attached thereto, reveal that the contracted work for two of Siena Villas's buildings alone was more than $130,000, (Doc. 1-1 at 4–5, 13–15, 17). Indeed, according to the evidence ABIC includes with its default judgment motion, the sum at issue here would likely surpass $300,000. (Doc. 43-2 at 2).

As for the third factor, ABIC maintains it is "more than foreseeable" that defending the underlying state court action will materially increase the amount of money at stake, especially since the underlying action involves "construction defect

9

claim[s]" which will necessitate the retention of experts. (Doc. 43 at 8–9). This factor further bolsters a finding that the amount in controversy will be more than $75,000.

In light of the above analysis, I find that the monetary prong is also fulfilled and that the Court therefore has subject matter jurisdiction over this lawsuit.

### C.

Moving to the issue of the Court's personal jurisdiction over Siena Villas, personal jurisdiction is comprised of "two distinct components: amenability to jurisdiction and service of process." *DeMelo v. Toche Marine, Inc.*, 711 F.2d 1260, 1264 (5th Cir. 1983); *Prewitt Enters., Inc. v. Org. of Petrol. Exp. Countries*, 353 F.3d 916, 925 n.15 (11th Cir. 2003). "Amenability to jurisdiction" means that a particular defendant is within the substantive reach of the court's jurisdiction under the governing law. *DeMelo*, 711 F.2d at 1264. Service of process, on the other hand, "is simply the physical means by which that jurisdiction is asserted." *Id.*

The amenability to jurisdiction prong is met here because—as referenced earlier—the well pleaded allegations in ABIC's complaint establish that Siena Villas is incorporated in Florida and that its principal place of business is also in Florida. *See* Fed. R. Civ. P. 4(k); Fla. Stat. § 48.193. As such, it is "within the substantive reach of" the Court's jurisdiction. *DeMelo*, 711 F.2d at 1264; *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) (noting that a corporate defendant's place of incorporation and/or principal place of business constitutes the "paradigm forum for the exercise of general jurisdiction"); *Subic Bay Marine Expl., Inc. v. JV China, Inc.*, 257 So. 3d 1139, 1141 (Fla. Dist. Ct. App. 2018) ("[C]orporations incorporated

10

under Florida law are Florida residents, subject to the general jurisdiction of Florida's courts.") (citation omitted).

Relative to the service of process prong, ABIC has presented proof that Siena Villas was served by way of an employee who was authorized to accept service on behalf of its registered agent. (Doc. 7 at 6). This is sufficient to demonstrate proper service of process. *See* Fla. Stat. § 48.091(4) (2023) ("[A] person attempting to serve process pursuant to this section on a registered agent that is other than a natural person may serve the process on an employee of the registered agent.").

### D.

This brings me to ABIC's request for a declaratory judgment stating it has no duty to defend or indemnify Carrollton because of the "Classification Limitation Endorsement" and "Abandoned Work" provisions. (Doc. 43). To properly assess the propriety of this request, some background is necessary.

In a diversity action like this one, a court must apply the substantive law of the forum state—here, Florida. *S. Owners Ins. Co. v. Easdon Rhodes & Assocs. LLC*, 872 F.3d 1161, 1164 (11th Cir. 2017); *Sphinx Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 412 F.3d 1224, 1227 (11th Cir. 2005) (citations omitted). "Under Florida law, the determination of an insurer's duty to defend falls under the so-called 'eight corners rule,' the name of which refers to the four corners of the insurance policy and the four corners of the underlying complaint." *Addison Ins. Co. v. 4000 Island Blvd. Condo. Ass'n*, 721 F. App'x 847, 854 (11th Cir. 2017) (quoting *Mid-Continent Cas. Co. v. Royal Crane, LLC*, 169 So. 3d 174, 182 (Fla. Dist. Ct. App. 2015)). "Put simply, the eight corners

11

rule provides that an insurer's duty to defend its insured against a legal action 'arises when the complaint alleges facts that fairly and potentially bring the suit within policy coverage.'" *Id.* (quoting *Jones v. Fla. Ins. Guar. Ass'n*, 908 So. 2d 435, 442–43 (Fla. 2005)).  If a complaint contains factual averments indicating that the injury may fall within the ambit of the policy, "the insurer must defend as a matter of law, 'regardless of the merits of the lawsuit.'" *Addison Ins. Co.*, 721 F. App'x at 854 (quoting *State Farm Fire & Cas. Co. v. Steinberg*, 393 F.3d 1226, 1230 (11th Cir. 2004)).  Further, "[a]ny doubts regarding the duty to defend are resolved in favor of the insured." *Id.* (citing *Jones*, 908 So. 2d at 443).

The Eleventh Circuit has recognized certain exceptions to the eight corners rule. *Id.*; *see also Mt. Hawley Ins. Co. v. H&M Builders, LLC*, 711 F. Supp. 3d 1373, 1379 (S.D. Fla. 2024).  As pertinent here, one such exception allows a court to "consider extrinsic facts if those facts are undisputed, and, had they been [pleaded] in the [underlying] complaint, they clearly would have placed the claims outside the scope of coverage." *Stephens v. Mid-Continent Cas. Co.*, 749 F.3d 1318, 1323 (11th Cir. 2014) (citing *Nateman v. Hartford Cas. Ins. Co.*, 544 So. 2d 1026 (Fla. Dist. Ct. App. 1989); *Nationwide Mut. Fire Ins. Co. v. Keen*, 658 So. 2d 1101 (Fla. Dist. Ct. App. 1995)).

An insurer's duty to indemnify is narrower than its duty to defend and is determined by evaluating the policy coverage in light of the actual facts in the underlying case. *Sinni v. Scottsdale Ins. Co.*, 676 F. Supp. 2d 1319, 1323 (M.D. Fla. 2009).  Generally, an insurer's duty to indemnify depends on the outcome of an action.

*See Mid-Continent Cas. Co. v. Delacruz Drywall Plastering & Stucco, Inc.*, 766 F. App'x 768, 770 (11th Cir. 2019); *J.B.D. Constr., Inc. v. Mid-Continent Cas. Co.*, 571 F. App'x 918, 927 (11th Cir. 2014). There is an exception to this general principle, however, where a "court can determine that the allegations in the complaint could under no circumstances lead to a result which would trigger the duty to indemnify." *Northland Cas. Co. v. HBE Corp.*, 160 F. Supp. 2d 1348, 1360 (M.D. Fla. 2001).

In Florida, an insurance policy is treated like a contract, and thus ordinary contract principles govern the interpretation of the policy. *Zurich Am. Ins. Co.*, 246 F. Supp. 3d at 1356. "The resolution of a dispute regarding insurance coverage begins with a review of the plain language of the . . . policy as bargained for by the parties." *Koikos v. Travelers Ins. Co.*, 849 So. 2d 263, 266 (Fla. 2003); *see also Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000) (same). Florida courts give the terms used in a policy their plain and ordinary meaning and read the terms in the light of the skill and experience of ordinary people. *See Altman Contractors, Inc. v. Crum & Forster Specialty Ins. Co.*, 832 F.3d 1318, 1322 (11th Cir. 2016); *see also Zurich Am. Ins. Co.*, 246 F. Supp. 3d at 1356.

Generally, Florida courts construe provisions establishing coverage as broadly as possible to ensure the greatest amount of coverage. *Zurich Am. Ins. Co.*, 246 F. Supp. 3d at 1356. Consistent with this approach, Florida courts interpret exclusions limiting the liability of an insurer more narrowly than provisions affording coverage. *U.S. Fire Ins. Co. v. Freedom Vill. of Sun City Ctr., Ltd.*, 279 F. App'x 879, 880 (11th Cir. 2008).

In the end, the burden is on the party seeking to recover on an insurance policy to show that there is coverage. *Auto Owners Ins. Co. v. Travelers Cas. & Surety Co.*, 227 F. Supp. 2d 1248, 1258 (M.D. Fla. 2002). An insurer, however, that is defending on the ground of non-coverage and that is relying on an exception in the policy bears the burden of demonstrating that the exception applies. *Id.*

Against this backdrop, I begin my analysis with ABIC's contention that it is entitled to a declaratory judgment stating it has no duty to defend or indemnify Carrollton premised on the Classification Limitation Endorsement. (Doc. 43 at 17–22); (Doc. 1 at 7–8). The Classification Limitation Endorsement provides that coverage under the Policy "is strictly limited to the classification(s) and code(s) listed on the [P]olicy [d]eclarations page" and that "[n]o coverage is provided for any classification(s) and code(s) not specifically listed on the [d]eclarations page[.]" (Doc. 1-2 at 74). The declarations page designates Carrollton's Policy as one for "[r]oofing—commercial" and gives it a code of 98677. *Id.* at 7–8.

The problem, however, is that ABIC's Policy and the underlying state court complaint do not appear to define "commercial roofing" or the parameters for the designation code. *See* (Docs. 1-1, 1-2). Given their silence on the matter, it is appropriate for the Court to look beyond the underlying state court complaint to the undisputed facts that, if pleaded in the underlying complaint, would place Siena Villas's claims outside the scope of coverage. *See Stephens*, 749 F.3d at 1323; *see also Progressive Express Ins. Co. v. JGR Doors & Windows, LLC*, 2024 WL 5055323, at *3 (M.D. Fla. Feb. 26, 2024) (examining facts not found in the underlying action to

14

discern whether the plaintiff had a duty to defend or indemnify the defendants since the underlying complaint did not speak to the scope of the policy's coverage), *report and recommendation adopted*, 2024 WL 5055311 (M.D. Fla. June 10, 2024).

One source of such uncontested facts is ABIC's complaint, since Siena Villas is deemed to have admitted all the well pleaded allegations set forth in that pleading given the clerk's default entered against it. According to those well pleaded averments, "each and every unit[ or] structure . . . that C[arrollton] performed any work on [during the project] was a 'residential' property" because those units or structures were all "three stories or less." *Id.* at 5, 7. As a result, ABIC's Classification Limitation Endorsement precludes any coverage under the Policy for Carrollton's work on Siena Villas's buildings. *See Kinsale Ins. Co. v. LW Sys., Inc.*, 2024 WL 3415531, at *4 (M.D. Fla. Apr. 10, 2024) (reviewing facts averred in a federal complaint in resolving a default judgment motion where the underlying state court complaint did not allege the necessary facts), *report and recommendation adopted*, 2024 WL 3415529 (M.D. Fla. Apr. 26, 2024); *United Specialty Ins. Co. v. Ken Creel Stucco & Stone, Inc.*, 2023 WL 4931171, at *5 (M.D. Fla. June 28, 2023) (finding no duty to defend where a policy exclusion barred coverage for damage from construction on a tract or track home because the insurer's undisputed averments stated that the subject house was built as a track development), *report and recommendation adopted*, 2023 WL 5544656 (M.D. Fla. Aug. 29, 2023); *Evanston Ins. Co. v. Enge Sols. Servs., LLC*, 2023 WL 4930988, at *4 (M.D. Fla. Feb. 17, 2023) (evaluating whether a policy exclusion applied by considering a claim's well-pleaded factual allegations, all of which were accepted as true based on a

default), *report and recommendation adopted sub. nom.*, *Enge Sols. Servs., LLC v. Evanston Ins. Co.*, 2023 WL 4931034 (M.D. Fla. Mar. 6, 2023). And because ABIC has no duty to defend Carrollton in the underlying action and because ABIC's duty to indemnify is narrower than its duty to defend, ABIC is absolved from any duty to indemnify Carrollton in the underlying lawsuit under the Classification Limitation Endorsement as well.[2] *Trailer Bridge, Inc. v. Ill. Nat'l Ins. Co.*, 657 F.3d 1135, 1146 (11th Cir. 2011) ("[A] court's determination that the insurer has no duty to defend requires a finding that there is no duty to indemnify.") (quoting *Philadelphia Indem. Ins. Co. v. Yachtsman's Inn Condo Ass'n*, 595 F. Supp. 2d 1319, 1322 (S.D. Fla. 2009)).

Given this finding, the Court need not address ABIC's alternative contention that it does not have a duty to defend or indemnify Carrollton under the Policy's "Abandoned Work" exclusion. (Doc. 43 at 22–25); (Doc. 1 at 8–10). Out of abundance of caution, however, and in the interest of completeness, I will discuss it here.

As alluded to earlier, the "Abandoned Work" exclusion states that the Policy "does not apply and will not cover a claim or suit arising out of any work, including project, or jobsite, or any other activity that has been abandoned." (Doc. 1-2 at 48). The exclusion defines "abandon" as occurring "when any insured has ceased, forsaken, left[,] or deserted [the] work, project[,] or jobsite." *Id.* It also defines

---

[2] ABIC's complaint additionally seeks a declaration that ABIC has no duty to defend Carrollton in the "Underlying Crossclaim." (Doc. 1 at 8). As it is not at all clear to what ABIC is referring in this regard or the reasons therefore, I do not address this request.

"abandon" as "includ[ing] the ceasing, forsaking, leaving[,] or deserting of work due to nonpayment to the insured or due to any insured or any person or entity the insured works for being forced off the project for any reason." *Id.*

This language in the "Abandoned Work" provision encompasses Carrollton's cessation of work at the Siena Villas buildings.  As noted previously, Siena Villas terminated its contract with Woodstone after Woodstone did not fix the problems that arose during the project, and this, in turn, caused Carrollton to leave the job sites. (Doc. 1 at 5–6).  Indeed, Siena Villas admits—by virtue of the default entered against it—that Carrollton "'abandoned' the subject property." *Id.* at 9.  ABIC therefore has no duty to defend or indemnify Carrollton in the underlying state court litigation based upon the "Abandoned Work" exclusion.[3]

IV.

In light of the foregoing, I respectfully recommend that the Court:

1.    Grant ABIC's *Third Amended and Renewed Motion for Default Final Judgment for Declaratory Relief Under Counts I [and] II of Its Complaint as to Defendant Sien[a] Villas at Beach Park Condo. Assoc.* (Doc. 43).

2.    Direct the Clerk of Court to enter a default declaratory judgment in favor of ABIC and against Siena Villas.

---

[3] To the extent ABIC propounds other arguments regarding abandonment that are not grounded on the "Abandoned Work" exclusion, (Doc. 43 at 22–25), the Court need not address them because they fall outside the relief sought in ABIC's complaint, (Doc. 1 at 8–10).

3.    Direct the Clerk of Court to terminate any pending motions and to close the case.

Respectfully submitted this 2nd day of July 2025.

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

## NOTICE TO PARTIES

A party has fourteen (14) days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections, or to move for an extension of time to do so, waives that party's right to challenge on appeal any unobjected-to factual finding(s) or legal conclusion(s) the District Judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

Copies to:
Honorable Virginia M. Covington, United States District Judge
Counsel of record